**United States District Court, Northern District of Illinois**

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8603 | DATE | 10/29/2003 |
| CASE TITLE | Raymond Ekdahl vs. Joanne B. Barnhart | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Ekdahl's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 30 2003 | 19 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 3 0 2003

RAYMOND EKDAHL,

      Plaintiff,

v.

JOANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

No. 02 C 8603
Paul E. Plunkett, Senior Judge

## MEMORANDUM OPINION AND ORDER

Through a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment, plaintiff Raymond Ekdahl ("Ekdahl") seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423. Ekdahl claims that the Administrative Law Judge's (the "ALJ") decision to deny him benefits should be reversed and set aside because the ALJ's conclusion that there are a significant number of jobs in the national economy which Ekdahl can perform is contrary to the facts. The Commissioner has also filed a Rule 56 motion for summary judgment, arguing that substantial evidence in the record supports the ALJ's finding. For the following reasons, we deny Ekdahl's motion for summary judgment and grant the Commissioner's motion for summary judgment.

19

## Relevant Facts

Ekdahl claims he has been disabled since June 8, 1998, the "disability onset date." Ekdahl was fifty-five years old at the time of the ALJ's decision and is a high school graduate. His past relevant work experience is as a journeyman electrician.

*Medical Evidence*

Medical evidence from both before and after June 8, 1998 was submitted to the ALJ. The evidence showed the following: In 1991, Ekdahl was diagnosed with adhesive capsulitis of the left shoulder. In 1994, a chest x-ray showed mild pleural thickening in the left hemithorax, consistent with asbestos-related pleural disease. In 1995, following a workplace injury, Ekdahl was diagnosed with a rotator cuff sprain of his right shoulder. X-rays taken at that time showed no bone or joint injury.

In January 1996, Ekdahl underwent a bone scan. The bone scan showed a mildly increased uptake in his right shoulder area but the clinical significance of this finding was unknown. Two months later, Ekdahl underwent arthroscopy of his right shoulder and subacromial arthroscopic decompression. The preoperative diagnosis was right shoulder rotator cuff impingement syndrome and probable rotator cuff tear. Even after participating in a physical therapy program, Ekdahl continued to complain of persistent limited range of motion and pain, and so in August 1996 he underwent a closed manipulation of his right shoulder and right shoulder arthroscopy with debridement.

In November 1996, after many months of physical therapy, Ekdahl underwent a Functional Capacity Evaluation ("FCE") with David Graziano, a physical therapist. The FCE showed that

-2-

Ekdahl was able to work at the medium physical demand level of an eight-hour workday according to U.S. Department of Labor standards. Graziano noted that Ekdahl had significant difficulty when attempting to perform shoulder lifting activities and overhead lifting activities because of his right shoulder dysfunction. Graziano recommended that Ekdahl continue with his home physical therapy program and noted that a general physical fitness program would benefit Ekdahl by improving his physical demand and enhancing his employment opportunities.

In 1997, in connection with a worker's compensation claim filed by Ekdahl, Dr. Peter Farrago stated that Ekdahl has a history of significant occupational exposure to asbestos and that, within a reasonable degree of medical certainty, the pleural thickening detected in the 1994 chest x-ray was a direct result of asbestos exposure.

In September 1998, approximately three months after Ekdahl's alleged disability onset date, Ekdahl underwent a psychiatric examination at the request of the state disability examiners. The examining physician concluded that Ekdahl did not have a psychiatric disorder. A few days later, again at the request of the state disability examiners, Ekdahl was seen by Dr. Karen Leone for an internal medicine examination. Leone noted that Ekdahl had limited range of motion in the right shoulder, and that Ekdahl complained of pain in the left shoulder after doing lifting and constant pain in his right shoulder. She also noted that Ekdahl complained of shortness of breath at times.

A November 1998 Residual Functional Capacity Assessment ("RFCA") showed that Ekdahl could lift twenty pounds occasionally and ten pounds frequently, and that he could sit and stand and/or walk, in each case, for six hours during an eight-hour workday. It was also noted that Ekdahl could only occasionally climb or crawl and that he needed to avoid overhead work. In addition, the RFCA indicated that Ekdahl should avoid working around respiratory irritants. The RFCA was

affirmed in June 1999. A 1999 exercise stress test revealed normal results. A 1999 cardiac report indicated that Ekdahl had atypical (non-cardiac) chest pain and that no restrictions had been placed on his physical activity.

In a November 1999 letter addressed to Ekdahl's lawyer, Dr. Kenneth Margules, a rheumatologist, indicated that he had first seen Ekdahl in September 1999, when Ekdahl complained of multiple aches and pains in various joints. According to Margules, Ekdahl suffers from asbestosis injuries in both lungs and suffers from a decline in his pulmonary function. Margules made the following diagnoses: (1) post-traumatic arthritis of the left shoulder; (2) post-traumatic stress of the right shoulder; (3) osteoarthritis of the right hip; (4) post-traumatic arthritis of the back; (5) post-traumatic arthritis of both ankles; (6) diabetes mellitus, untreated; and (7) fibromyalgia. Margules indicated that he would be surprised if Ekdahl were to ever work again given the extent of his arthritis in his shoulders, hip and ankles.

In a fibromyalgia questionnaire, Margules indicated that Ekdahl met the "American Rheumatological criteria" for fibromyalgia. Ekdahl had pain and several fibromyalgia-related symptoms. The pain would interfere with Ekdahl's attention and concentration. Ekdahl tired easily, needed to lie down and was incapable of performing even low-stress jobs. Margules further opined that Ekdahl could walk only one city block without pain, sit for twenty minutes at a time, stand for twenty minutes at a time, occasionally lift up to ten pounds and that he would need unscheduled breaks.

In December 2000, Dr. Charles O'Laughlin, an orthopedic surgeon, examined Ekdahl. In a letter to the Illinois Department of Human Resources, O'Laughlin stated that Ekdahl was capable of medium-demand physical work, but that Ekdahl would have difficulty with direct overhead

activities due to loss of motion.¹ O'Laughlin imposed lifting restrictions, stating that Ekdahl could lift twenty pounds occasionally and ten pounds frequently.²

At the hearing, Dr. Sheldon Slodki testified as a medical expert. Slodki noted that although Ekdahl had various medical complaints, none of the test results regarding the complaints indicated that Ekdahl met any of the Social Security Administration's (the "SSA") listing of impairments. Slodki opined that the weight requirements for medium work would be difficult for Ekdahl given his shoulder complaints, but that Ekdahl could easily do light work.

*Ekdahl's Hearing Testimony*

At the hearing, Ekdahl testified that he felt his diabetes was his most significant health problem, although he does not take any medication for the condition as he is trying to control it through diet. He experiences chest pain between two and three times a week, which is relieved by sitting or otherwise taking it easy. Ekdahl testified that he could walk about a block and a half before needing to rest, and that he takes no medication for his breathing problems. He experiences "strong discomfort" when raising his left shoulder above shoulder height, and experiences greater discomfort when he does the same with his right shoulder. Ekdahl also testified that he fatigues easily.

*Vocational Expert Mendrick's Hearing Testimony*

Vocational expert Frank Mendrick testified that Ekdahl was a journeyman electrician, that

---

¹ O'Laughlin noted in his letter that Ekdahl had "excellent strength and no evidence of anything really severe going on which would prevent him" from doing activities at the shoulder level and below. (R. 480.)

² These lifting restrictions correspond to "light work." 20 C.F.R. § 404.1567(b).

the work was skilled work and that the exertion level fell between medium and heavy. The skills associated with the profession include a thorough knowledge of the theory of electricity, including the ability to identify materials appropriate for different situations and knowledge of practices and procedures required for proper construction, assembly and safety. Mendrick testified that these skills are transferable to the following light work jobs in the Chicago metropolitan area: 2,600 electrician jobs, 2,000 electrical repair jobs, 7,800 electrical assembly jobs and 2,000 electrical sales jobs. When asked by the ALJ about job opportunities for a hypothetical individual who could stand for six hours in an eight-hour workday, lift twenty pounds occasionally and ten pounds frequently, stoop and bend only frequently, squat, climb and crawl only occasionally and cannot reach above shoulder level with either arm, Mendrick revised the number of available of jobs downward – only the sales work (2,000 jobs) and assembly work (7,800 jobs) could be performed by this hypothetical person.

*The ALJ's Decision*

In a decision dated August 13, 2001, ALJ Alan Jonas determined that, for the purposes of disability benefits, Ekdahl was not disabled. The ALJ found that Ekdahl has diabetes mellitus; can occasionally lift and/or carry twenty pounds and can frequently lift and/or carry ten pounds; can sit six hours out of an eight-hour workday; can stand and/or walk six hours out of an eight-hour workday; can frequently stoop and bend; and can occasionally squat, crawl and climb stairs and ramps. The ALJ found, however, that Ekdahl cannot reach above shoulder level. Given Ekdahl's vocational profile and residual functional capacity, the ALJ concluded that Ekdahl cannot perform any of his past relevant work. (R. 25). But the ALJ determined that Ekdahl had acquired skills from his past work that are transferable to the following light work jobs: electrician (2,600 jobs),

electronic repair person (2,000 jobs), electronic assembler (7,800 jobs) and sales associate in the electric department of a retail store (2,000 jobs). Because Ekdahl can perform a significant number of jobs in the regional economy consistent with his medically determinable impairments, functional limitations, age, education and past work experience, the ALJ concluded that Ekdahl was not disabled.

### The Legal Standard

Our review of final decisions of the Commissioner (here, the ALJ) is deferential.[3] The Social Security Act establishes that findings as to any fact are conclusive if supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (internal citation omitted). We do not reevaluate the facts, reweigh the evidence or substitute our own judgment for that of the ALJ. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

### Discussion

The SSA regulations provide for a five-step inquiry to determine whether a claimant is disabled.[4] If a claimant satisfies step four, inability to perform past work, then the burden shifts to

---

[3] The ALJ's decision is the final decision of the Commissioner because the SSA Appeals Council denied Ekdahl's request for review of the ALJ's decision. (R. 8.) 20 C.F.R. § 404.981.

[4] The five steps are: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. *See Knight*, 55 F.3d at 313; 20 C.F.R. § 404.1520.

-7-

the SSA to establish that the claimant is capable of performing other work in the economy. *See Knight*, 55 F.3d at 313. The ALJ found that Ekdahl satisfied step four and thus the burden shifted to the Commissioner to show that Ekdahl can perform a significant number of other jobs existing in the regional economy consistent with his impairments, functional limitations, age, education and past work experience. (R. 26.) The ALJ found that the Commissioner met her burden. The issue before us is whether substantial evidence supports the ALJ's finding.

Ekdahl asserts that the ALJ's decision is erroneous. Specifically, he claims that (1) the ALJ miscounted the total number of available jobs; (2) the ALJ mistakenly assumed that Ekdahl can perform sales associate jobs; and (3) the ALJ mistakenly included assembly jobs in the list of available jobs.[5] We disagree, finding that taken as a whole, the evidence supports the ALJ's ultimate finding that Ekdahl is not disabled because there are a significant number of jobs in the regional economy which he can perform. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (when applying deferential standard to ALJ decision, evidence is considered in its entirety). We address Ekdahl's points seriatim.

*Number of Available Jobs*

During the hearing, Mendrick stated that Ekdahl's skills were transferable to four categories

---

[5] Ekdahl initially argued that it was error for the ALJ to discount the medical opinion of Ekdahl's treating physician, Dr. Margules. Ekdahl seems to abandon this argument, however, in his reply brief. (Pl.'s Reply at 7.) We note that an ALJ is not obligated to give controlling weight to the evidence of a treating physician when the evidence is not well-supported by medical findings and is inconsistent with other substantial evidence in the record. *See Dixon*, 270 F.3d at 1177. Here, the ALJ found that Margules's diagnosis of fibromyalgia was not properly documented and that many of the diagnoses "submitted by Dr. Margules are not documented by any complaints, or any medical treatment" since the disability onset date. (R. 22.) In addition, the ALJ found that the objective medical evidence does not support the finding that Ekdahl experiences "any totally debilitating pain and/or any other totally debilitating symptomatology, such that the claimant cannot perform light work." (R. 26.)

of jobs – electrician, electrical repairer, electrical assembler and electrical sales associate. The ALJ then presented to Mendrick a hypothetical person whose limitations matched those of Ekdahl that were supported by the medical evidence. The ALJ asked Mendrick: "Would these limitations restrict the number of jobs which you've previously identified?" Mendrick responded: "From the list of jobs I gave you last time, this person could do the sales work. And this person would also be able to do the assembly work, but not the other two jobs, Judge." (R. 50.)

In his written decision, the ALJ found that Ekdahl "is able to perform a significant number of light occupations existing throughout the region and throughout the state wherein [Ekdahl] resides." (R. 31.) The ALJ then listed as examples of light work occupations the four categories of jobs to which Ekdahl's skills were transferable rather than the two categories of jobs that Mendrick stated a hypothetical person with certain limitations could perform. Ekdahl claims that this resulted in an overcounting of available jobs (14,400 jobs vs. 9,800 jobs).

We do not agree that the ALJ's finding was based solely on the availability of 14,400 jobs. The record indicates that, in reaching his decision, the ALJ considered all of the evidence. He considered Mendrick's testimony, stating that Ekdahl "is able to perform the jobs enumerated by the vocational witness," and consulted SSA regulations such as 20 C.F.R. Pt. 404, Subpt. P, App. 2. (R. 26, 30, 31.) Even if the ALJ relied solely on Mendrick's testimony to support his conclusion, the two categories of jobs mentioned by Mendrick as available to the hypothetical person with certain limitations (sales associate and assembler) would result in 9,800 available jobs – enough to satisfy the "substantial evidence" standard. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs is significant number of jobs).

*Sales Associate Jobs*

Ekdahl claims that his fitness for electrical sales associate jobs is not supported by the evidence. He first argues that these jobs cannot accommodate someone with his lifting and overhead work limitations. Mendrick testified that there are approximately 5,400 electrical sales associate jobs, but that he reduced the number of available jobs to 2,000 to account for Ekdahl's limitations. (R. 58.) Mendrick stated that some companies specialize in electrical equipment that is small and light and where the inventory is kept at shoulder level. Given this testimony, we find that it was reasonable for the ALJ to conclude that 2,000 sales associate jobs are available to Ekdahl. *See Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992) (use of vocational expert and weight due expert's testimony within discretion of ALJ).

Ekdahl then argues that sales associate jobs are not available to him because of his diabetes-related foot problems, his osteoarthritis of the right hip and his arthritis in both ankles. Ekdahl claims that the ALJ ignored these complaints and should have included them in the hypothetical he gave to Mendrick.

When posing a hypothetical question to a vocational expert, an ALJ need only include impairments the ALJ finds are supported by evidence in the record. *Id.* at 540. The ALJ here noted that Ekdahl has not sought medical treatment for arthritis in his right hip or for arthritis in his ankles since the alleged disability onset date, June 8, 1998. (R. 22.) He also found that Ekdahl has no residual impairment from diabetes mellitus. (R. 29, 30.) The ALJ properly found that Ekdahl's subjective complaints were not supported by the objective medical evidence, the evidence from the consulted examiners or Ekdahl's own testimony about his daily activities. *See Knight*, 55 F.3d at 314 (subjective complaints may be discounted if inconsistent with evidence as a whole). *See also*

*Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) (lack of medical evidence to support claimant's complaint can bear on claimant's credibility). The evidence, including the opinions of O'Laughlin and Slodki, support the ALJ's finding that Ekdahl can perform light work. The hypothetical the ALJ posed to Mendrick was proper and the ALJ's conclusions regarding Ekdahl's ability to perform sales associate jobs are supported by substantial evidence.

*Assembly Jobs*

Ekdahl argues that the electrical assembly jobs referred to by Mendrick are actually unskilled jobs which do not require knowledge of electricity, the ability to identify appropriate materials or knowledge of safety practice and procedure. Thus, argues Ekdahl, these 7,800 jobs should not be counted among the jobs available to him. We disagree.

Because of Ekdahl's age, the Commissioner must demonstrate that the significant number of jobs in the regional economy capable of being performed by Ekdahl are either skilled or semi-skilled. 20 C.F.R. § 404.1568(d)(4). According to the *Dictionary of Occupational Titles*, the job of electrical assembler has a Specific Vocational Preparation[6] ("SVP") level of 3, meaning that it would take over one month and up to and including three months to learn the job. This puts the job of electrical assembler in the category of semi-skilled work. *See* Social Security Rule 00-4p (effective 12/4/00) (stating that "unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9"). Semi-skilled work is appropriate to include among the categories of work to which Ekdahl's skills are transferable. *See*

---

[6] The SVP indicates the amount of lapsed time required by a typical worker to develop the facility needed for average performance in a particular job.

-11-

*Terry v. Sullivan*, 903 F.2d 1273, 1277 (9th Cir. 1990) (acquired skills are not transferable to unskilled work); 20 C.F.R. § 404.1568(d)(4). Moreover, Mendrick's testimony describing the type of semi-skilled electrical assembly jobs he included in the number of available jobs is consistent with the *Dictionary of Occupational Titles* and supports the ALJ's conclusion that these jobs are available to Ekdahl. (R. 50 - 55.) *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (hearing officer entitled to rely on expert testimony even if it contradicts *Dictionary of Occupational Titles*).

### Conclusion

We find the Commissioner's decision that Ekdahl is not disabled is supported by substantial evidence. Accordingly, Ekdahl's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. This is a final and appealable order.

**ENTER:**

UNITED STATES DISTRICT JUDGE

DATED: 10-29-03